# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**EXCHANGE INTERNATIONAL, INC.,**

       **Plaintiff,**

**-vs-**                                      **Case No. 6:10-cv-1273-Orl-35DAB**

**VACATION OWNERSHIP RELIEF, LLC,
MOISES VARGAS, BENJAMIN VARGAS,
CARMEN CILIBERTI, ANOUAR
LAROUSSI and LUIS DIAZ,**

       **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument[1] on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION FOR PRELIMINARY INJUNCTION (Doc. No. 13)** |
| **FILED:** | **September 10, 2010** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** and **DENIED in part**. | |
| **MOTION:** | **PLAINTIFF'S MOTION FOR ENTRY OF STIPULATED PRELIMINARY INJUNCTION (Doc. No. 22)** |
| **FILED:** | **September 17, 2010** |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**. | |

---

[1] Oral argument was heard on September 20, 2010.

Plaintiff Exchange International, Inc. ("Exchange International"), originally sought a preliminary injunction precluding Defendants Vacation Ownership Relief, LLC, Moises Vargas, Benjamin Vargas, Carmen Ciliberti, Anouar Laroussi and Luis Diaz from using Exchange International's copyrighted "advocacy package" and from using or disseminating Exchange International's customer database. Defendants Moises Vargas, Benjamin Vargas, and Carmen Ciliberti have signed a stipulated preliminary injunction agreeing not to infringe Exchange International's copyright, engage in unfair competition, or use its customer list. Doc. 22. Based on representations made at the hearing, the principals of Vacation Ownership Relief, LLC, ("VOR") have also agreed in principle to the injunction. Only Laroussi and Diaz appeared at the hearing on September 20, 2010 and have filed their Answers which contain information responsive to the preliminary injunction issues. Docs. 20, 21.

**Background Facts[2]**

Exchange International is in the business of providing information and services to consumers with fractional ownership interest in timeshare properties or prospective consumer purchasers of fractional ownership interests in timeshare properties. The business was begun in 2009 and offered timeshare owners the ability to exchange time share weeks or donate them to charitable organizations. Exchange provides services to consumers with current or timeshare ownership on a subscription-based website. As one of several services offered, Exchange provides information to its customers who are unhappy with the lack of performance by timeshare resellers. Harold Gabriel Uhrig, the chief operating officer of Exchange International, contends that these customers are subjected to timeshare

---

[2]Most of the background presented here is taken from the material submitted by Plaintiff in support of its motion. Some of the "facts" are subject to dispute and may not be fully supported. In particular, the contentions regarding the Defendants' access to and use of Plaintiff's computer stored information is presented vaguely and without apparent foundation from anyone with personal knowledge. As is customary, no evidentiary hearing was held on the motion, and any findings relied on herein are necessarily preliminary.

resale "scams" in which owners of timeshares are contacted by a resale company and offer to broker a sale of the owner's timeshare property to a willing purchaser, but first require the timeshare owner to pay hundreds to thousands of dollars in upfront marketing fees; the resale company then pockets the marketing fees and does little to nothing to promote the sale of the owner's property. Uhrig Aff., Doc. 13-1.[3]

The customers subsequently wish to get their money refunded from the timeshare resale companies and, to this end, Exchange includes information in its "advocacy package" that was "developed to assist its members in the step-by-step process of dispute resolution with non-performing resale companies." *Id*. Exchange contends it has also developed confidential business methods, through extensive industry experience and legal research, which are effective in assisting members in the dispute resolution process. *Id.* Exchange has a registered copyright on its advocacy package with the U.S. Copyright Office under U.S. Registration No. TX0007188044. *Id.* As part of the advocacy package, Exchange International, through a local attorney, Hal Uhrig, developed a "custom[4] advocacy letter" for use in conjunction with its advocacy package; the letter provides key information regarding the rights of clients who believes they have been subjected to a timeshare resale scam.[5] *Id.*

---

[3] The Court views Plaintiff's description of its business with some skepticism. The intended customer base includes individuals who previously made disappointing purchases of time share units (often as the result of sophisticated sales techniques) *and* who thereafter availed themselves of high priced resale services that failed to deliver as promised. Such individuals must be seen a vulnerable population. Plaintiff's business includes inducing these individuals to purchase yet additional services with respect to their time shares.

[4] The use of "custom" to describe a form letter is curious.

[5] The Court is not required, and does not reach, the propriety of providing a blanket "advocacy letter" putatively to be signed by an attorney, as provided to anyone who subscribes to the "advocacy package" without any true representation by that attorney. The blanket letter is from attorneys Peter Zies, Jad Brewer, and Fred Trabold. Doc. 13-1 at 26. The "advocacy package" reads:
> You are going to attach to your letter a copy of a letter from a law firm that gives the appearance that you have already consulted with that firm. The letter will be will be addressed to you from the law firm and will advise that the firm has evaluated your particular situation . . . [A]nd [has] investigated the resale company that you dealt with. . . The firm will tell you in this letter that it has concluded that you have a solid case against the company for fraud. . . . The letter will express confidence in the case . . .

(continued...)

Exchange International has website servers which are "protected computers" containing information regarding its members and customers, including highly proprietary confidential data such as personal billing information which includes customer email addresses, mailing addresses, telephone numbers, and credit card numbers. *Id.* Exchange International's confidential and proprietary information was developed through a significant investment in time, effort and capital. *Id.*

Defendants Anouar Laroussi and Luis Diaz are former independent contractors of Exchange International who were not involved[6] in the creation of the Exchange International advocacy package; Laroussi was the sales director from October 2009 to April 2010. Uhrig Aff., Doc. 13-1. Laroussi signed an Independent Contractor agreement on October 26, 2009 which required that he not disclose information, including Exchange International's clients or business information that was deemed confidential. Doc. 13-1 at 33. Laroussi also agreed not to directly compete with Exchange International for two years or in the state of Florida. *Id.* Diaz signed an identical agreement on January 4, 2010. Doc. 13-1 at 44.

While independent contractors of Exchange International, Laroussi and Diaz had limited access to Exchange International's protected computers, but did not have authorization to access and copy Exchange International's highly confidential customer database or customer billing information.

---

[5](...continued)
YOU ARE NOT GETTING A LAW FIRM. YOU ARE NOT A CLIENT OF THIS LAW FIRM. THE LAW FIRM IS NOT GOING TO FILE ANY ACTION FOR YOU IN THIS MATTER. THIS LAW FIRM REALLY DOES CHARGE $350 PER HOUR FOR ITS SERVICES. UNLESS YOU WANT TO PAY $350 PER HOUR, YOU DO NOT WANT TO CALL THEM WRITE THEM OR TAKE UP ANY OF THEIR TIME. THIS LETTER IS A TOOL! IT IS TO BE ATTACHED TO YOU TEMPLATE LETTER TO THE RESALE COMPANY IN ORDER TO MAKE THEM BELIEVE THAT A LAW FIRM HAS ALREADY BEEN ENGAGED AND IS WAITING IN THE WINGS TO BRING DOWN THE POWER AND MAJESTY OF THE STATE AND FEDERAL GOVERNMENTS ON THEIR HEADS.
Doc. No. 13-1 at 17-18.

[6]Laroussi makes some assertions that the idea for the advocacy package and initial assembly of some of the included material were his work product.

Uhrig Aff. Laroussi was terminated from Exchange International in April 2010. Prior to his termination, Laroussi had approached Exchange International's management and presented a business proposition offering to wholesale the advocacy package to resale firms and other companies. *Id*.

Plaintiff makes several conclusory assertions about Laroussi's access to its computers after he was terminated. However, these assertions, as set forth in the Uhrig and Wroblewski Affidavits are vague and unsupported by personal knowledge. No specific facts or expert observations are offered to support Plaintiff's conclusions. Given this unsatisfactory evidence, the Court cannot grant relief predicated on these assertions.

Luis Diaz's independent contractor relationship with Exchange International was terminated in or about January 2010. *Id*. In February 2010, an employee of Exchange International learned that Luis Diaz's uncle, Benjamin Vargas[7], was organizing a company for the purposes of selling advocacy packages to victims of timeshare resale scams. *Id*. Exchange International employees[8] learned that Defendant Vacation Ownership Relief, LLC, had established the website <my-vor.com> which was offering for sale timeshare "Resale Resolution Packages"; Exchange International obtained a copy of the VOR package. Watson Aff., Doc. 13-4 & 13-6.

Following the filing of the instant lawsuit, on August 27, 2010 Laroussi called Adam Wroblewski, a consultant at Exchange International, and admitted that the had obtained a database of 1500 of Exchange International's clients and stated that he would exploit the customer database in some unspecified way.[9] Wroblewski Aff., Doc. 13-2. Laroussi is listed as the Managing Member and registered agent of U.S. Timeshare Advocacy, LLC, with the Florida Division of Corporations.

---

[7]The Manager of Vacation Ownership Relief, LLC, is listed as Moises Vargas Jr. *See* Doc. 13-5 at 5.

[8]*See* Doc. 13-1 at 2-3.

[9]Laroussi denied that this odd exchange took place.

Doc. 13-5 at 10. Also listed as a Managing Member of U.S. Timeshare Advocacy, LLC is Luis Diaz. Doc. 13-5 at 13.

**Standards for Issuance of Preliminary Injunction**

The Court may issue a preliminary injunction if the moving party shows: a) a substantial likelihood of success on the merits; b) that the moving party will suffer irreparable injury if the injunction is not issued; c) that the threatened injury to the moving party outweighs the potential damage that the proposed injunction may cause the non-moving party; and d) that the injunction will not be adverse to the public interest. *General Motors Corp. v. Phat Cat Carts, Inc.*, 504 F.Supp.2d 1278, 1282-83 (M.D. Fla. 2006) (Scriven, J.) (citing *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) and *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11th Cir.1989)); see also *Council v. Department of Veterans Affairs*, 2010 WL 98984, *3 (M.D. Fla. Jan. 6, 2010) (Scriven, J.) (citing *Winter v. Natural Resources Defense Council, Inc.,* __ U.S. __, __, 129 S.Ct. 365, 374 (2008)).

In order to establish an irreparable harm or injury, a party must show that remedies at law, such as monetary damages, are inadequate to compensate for that injury. *Council v. Department of Veterans Affairs,* 2010 WL 98984, 3 (M.D. Fla. 2010) (citing *Ebay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S.Ct. 1837 (2006)). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Id.* (quoting *Cunningham*, 808 F.2d at 821).

A consideration of these factors by the Court "requir[es] a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief." *Phat Cat Carts*, 504 F.Supp.2d 1278, 1282-83 (citing *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000)). The decision to grant or deny a preliminary injunction is within the sound discretion of the district court.

*Phat Cat Carts*, 504 F.Supp.2d 1278, 1283 (citing *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002)). Thus, the Court must determine whether issuance of a preliminary injunction is appropriate in this matter.

### Application to the Preliminary Injunction Factors

1. *Substantial Likelihood of Success on the Merits*

a. *Copyright infringement and unfair competition*

Exchange seeks a preliminary injunction under the Copyright Act, 17 U.S.C. § 501(a), which forbids a third party from violating the exclusive rights of a copyright owner as provided by sections 106 through 122 of the Copyright Act. 17 U.S.C. § 501. A district court has the power to grant a preliminary injunction to prevent or restrain infringement of a copyright. 17 U.S.C. § 502(a). To establish a prima facie case of copyright infringement, a party must demonstrate: (1) that it owns a valid copyright in the works at issue; and (2) that the infringer copied original elements of those works. *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir. 2002); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349, 111 S.Ct. 1282 (1991). A copyright registration certificate proves "prima facie proof of the existence of a valid copyright." 17 U.S.C. § 401(c); *see C.B. Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1081 (S.D. Fla. 2007). Exchange International registered the advocacy package with the Copyright Office and obtained U.S. Copyright Registration No. TX0007188044. Uhrig Aff., Doc. 13-1.

To state a claim for unfair competition under Florida common law, Exchange International must show (1) deceptive or fraudulent conduct of a competitor and (2) likelihood of consumer confusion. *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F.Supp.2d 1314, 1324-25 (M.D. Fla. 2007) (citing *M.G.B. Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486, 1494 (11th Cir. 1990)). The Florida common law of unfair competition is an "umbrella for all statutory and nonstatutory

causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Third Party Verification, Inc.*, 492 F.Supp.2d at 1325 (citing *American Heritage Life Insurance Company v. Heritage Life Insurance Company*, 494 F.2d 3, 14 (5th Cir. 1974)). Rather than going to the question of copying in the manufacture of a product, "unfair competition goes to the question of marketing" and the pleading party must allege that it competes with its opponent for a common pool of customers *Third Party Verification, Inc.*, 492 F.Supp.2d at 1325 (citing *B.H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1263 (5th Cir. 1971)).

Exchange must establish that Defendants copied original elements of the copyrighted works. *Leigh v. Warner Brothers, Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000). In a comparison of VOR's "resolution package" and Exchange International's "advocacy package," large portions are identical to Exchange International's "advocacy package." *See* Doc. 13-6; *Epic Metals Corp. v. Condec, Inc.*, 867 F.Supp. 1009, 1012-13 (M.D. Fla. 1994). The Court finds that Exchange International has a substantial likelihood of success on the merits of its claim of copyright infringement against Defendant VOR. Based on this evidence, Exchange International is substantially likely to prevail on the merits of its copyright infringement and unfair competition claims against Vacation Ownership Relief, LLC; however, Exchange represented at the hearing that VOR had agreed in principle to the stipulated injunction, so any relief sought against it may be moot under the current posture of the case.

Laroussi[10] represented to the Court that he had started working on the advocacy package in January 2010, which would have been while he was employed at Exchange International. He argued that "none" of the information contained in the advocacy package is copyrightable, but rather can be learned from books or websites, such as contacting certain government agencies to complain about

---

[10]It should be noted that the responding Defendants are not represented by counsel. As a result, their presentations are not in the usual form and are not fully responsive to Plaintiff's submissions and the issues presented by the motion. Consistent with its obligations, the Court has construed those pro se submissions so as to achieve substantial justice.

the resale companies. Laroussi also stated that his Independent Contractor Agreement (containing a non-compete) was with a different timeshare company (owned by the Uhrig family) and not with Exchange International, Inc.; however, on its face the document in the record shows the Independent Contractor Agreement was between Laroussi and Exchange International. Doc. 13-1. He further stated that access to the computer system was impossible and he could not have obtained Exchange International's customer list. Laroussi admitted that he helps people if they have been "scammed" by selling them his own package consisting of forms to complain to the state attorneys general, the Better Business Bureau, etc., which he contends is all public information.

Based on the limited record, the Court finds that Laroussi's representations that he did not sign the Exchange International Agreement or that he is using his own unique advocacy package are not credible; therefore, Exchange International has a substantial likelihood of success on the merits of its claim of copyright infringement and unfair competition against Defendant Laroussi.

It was undisputed at the hearing that Diaz had stopped working at Exchange International in late January 2010, before the time the "advocacy package" was created, and he was only selling new timeshares in his subsequent employment for Wyndham Resorts. Diaz also represented that VOR never opened operations. He also represented at the hearing that he intended to move to Mexico on September 29, 2010, which may moot the claims against him. The Court finds that Exchange International has failed to show a substantial likelihood of success on the merits of its claims of copyright infringement and unfair competition against Defendant Diaz.

b. *Computer Fraud and Abuse Act and conversion*

Exchange International seeks an injunction to keep Laroussi from using its customer list/database, asserting a claim for conversion and a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(g). Under Florida law, civil conversion is the wrongful deprivation of an owner's

property. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 132 (Fla. 1948) (quoting *Wilson Cypress Co. v. Logan*, 120 Fla. 124 (Fla. 1935)). Customer lists and related information may constitute protectable trade secrets under Florida law. *See* Fla. Stat. § 688.002(4)[11]; *Variable Annuity Life Ins. Co. v. Dull*, 2009 WL 3180498, *4 (S.D. Fla. Sept. 25, 2009) and numerous cases cited therein. Florida law protects customer lists and related information (addresses, phone numbers, etc.) from misappropriation and conversion through injunctive relief, especially when the lists are converted by former employees. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *4-5 (S.D. Fla. Oct.4, 2001); *Spa Parts, Accessories & Services, LLC v. Seeker*, Case No. 8:09-cv-1247-T-27MAP, 2009 WL 2496287, 1 (M.D. Fla. Aug. 12, 2009) (finding conversion of customer list and entering preliminary injunction to prevent use of customer information by competitor run by former employee who had gained access to computer system after no longer employed and taken customer list); *see also Sethscot Collection, Inc. v. Drbul*, 669 So.2d 1076, 1078 (Fla. App. 3d DCA 1996) (enjoining former employee's use of clothing retailer's active customer list containing names of customers who had ordered from retailer in past eight years and detailed purchasing history for each one).

To state a civil claim under the Computer Fraud and Abuse Act, Exchange International must prove that a defendant (1) intentionally accessed a computer, (2) lacked authorization or exceeded his authorized access to the computer, (3) obtained information from the computer, and (4) caused a loss of at least $5,000. *Clarity Servs. v. Barney*, 698 F. Supp. 2d 1309, 1313 (M.D. Fla. 2010).

---

[11]Pursuant to Florida's Uniform Trade Secrets Act, " '[t]rade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
    (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
    (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Fla. Stat. § 688.002(4).

As noted above, Plaintiff's proof regarding access to and use of computerized information is unsatisfactory. The Court really has no idea what Laroussi is specifically accused of doing, nor what evidence supports the notion that he did anything improper with respect to the computer system or the information stored there. Accordingly, the Court cannot find that Plaintiff has established any likelihood of success on these claims.

3. *Breach of contract against Laroussi and Diaz*

Exchange International also seeks a preliminary injunction on its breach of contract claims against Laroussi and Diaz. For the reasons stated above, the relief against Diaz appears to be mooted by his move to Mexico on September 29, 2010; alternatively, Exchange International failed to show a likelihood of success on the merits in that Diaz was selling new time shares for Wyndham Resorts, and Exchange International has not shown that Diaz was "reselling" existing time shares for individuals who were already owners.

As to Laroussi, Exchange International argues it is exposed to great financial harm by Laroussi's violation of the non-compete covenant of his Independent Contractor Agreement. The Eleventh Circuit in *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230-31 (11th Cir. 2009), explained the analysis under the applicable Florida statute governing restrictive covenants in employment contracts:

> In 1996, Florida adopted Fla. Stat. § 542.335, which "contains a comprehensive framework for analyzing, evaluating and enforcing restrictive covenants contained in employment contracts." Envtl. Servs., Inc. v. Carter, 9 So.3d 1258, 1262 (Fla. Dist. Ct. App. 2009). For a restrictive covenant to be valid, "[t]he person seeking enforcement of [the] restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." Fla. Stat. § 542.335(1)(b). Section (1)(b) of the statute enumerates a non-exhaustive list of "legitimate business interest[s]." Among these are: (1) "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets"; (2) "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients"; and (3) "[e]xtraordinary or specialized training."

> In addition, to be enforceable, restrictive covenants must be reasonable with regard to time, area and line of business. Fla. Stat. § 542.335(1). Once an employer establishes a prima facie case that the contractually specified restraint is "reasonably necessary to protect the legitimate business interest[s] . . . justifying the restriction," the burden of proof shifts to the employee to show that "the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest[s]." Fla. Stat. § 542.335(1)(c). If the court finds that the "contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest[s]," the court is required to "modify the restraint and grant only the relief reasonably necessary to protect such interest or interests." *Id.*
>
> "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j). This presumption, however, is rebuttable. *JonJuan Salon, Inc. v. Acosta*, 922 So.2d 1081, 1084 (Fla. App. Dist. Ct. App. 2006).

Exchange International contends it has "legitimate business interests justifying the restrictive covenant," *see* Fla. Stat. § 542.335(1)(b), particularly goodwill in the marketplace, *i.e.*, in its substantial relationships with specific prospective or existing customers, and its customer database.

Exchange International seeks to enforce the non-compete restrictive covenant to bar Laroussi only from business activities that directly compete with the business of Exchange International, anywhere within the state of Florida for a period of two years. Exchange International argues that enforcement of the restrictive covenant is necessary and reasonably related to the protection of Exchange International's legitimate business interests. To be enforceable, restrictive covenants must be reasonable with regard to time, area, and line of business. Fla. Stat. § 542.335(1). The court is to presume reasonable any restraint 6 months or less in duration and shall presume unreasonable in time any restraint of more than 2 years in duration. Fla. Stat. § 542.335 (1)(d). Because the restraint is two

years it is not presumed to be unreasonable.[12] The Court finds that Exchange International has shown a likelihood of success on its claims to enforce the terms of the restrictive covenant in Laroussi's Independent Contractor Agreement.

Because Exchange International has shown the restrictive covenant is "reasonably necessary to protect the legitimate business interest or interests justifying the restriction," Section 542.335(1)(c), it is Laroussi's burden to show that the "contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established business interest or interests," in which case the court shall "modify the restraint and grant only the relief reasonably necessary to protect such interest or interests." *Id*.

Laroussi did not address the specific restrictions of the non-compete covenant. Instead, Laroussi made the general argument that he should be able to work in the timeshare business as a means to make a living. Laroussi did not deny that he is in the very same business as Exchange International, in which he helps existing timeshare owners if they have been "scammed" by selling them his own $50 advocacy package consisting of forms guiding them in complaining to the state attorneys general, the Better Business Bureau, etc. Laroussi failed to present a copy of the package he uses,[13] and in any event, because it is undisputed that he had access to Exchange International's package (alleging he created it) while he was an independent contractor for Exchange International, he would be precluded by the non-compete covenant from selling the same type of "advocacy" product in the State of Florida for two years.         Exchange International has shown a likelihood of success

---

[12]Though not presumed to be unreasonable, the Court has doubts about the reasonableness of two year restriction for an independent contractor who worked for Plaintiff for such a short time. It seems unlikely that barring an individual with substantial prior experience from working in the industry for two years is necessary to protect the legitimate interests of the Plaintiff in this volatile business.

[13]Laroussi attached to his Answer a version of a package from "The Timeshare Owner Advocate" that Laroussi argues shows the idea for such a package was not an original one.

on the merits that the non-compete covenant in Laroussi's Independent Contractor Agreement is enforceable against Laroussi.

However, Exchange International has *not* shown a likelihood of success on the merits that the non-compete covenant in the Independent Contractor Agreement is enforceable against Diaz. Section 542.335(1), Florida Statutes, permits enforcement of contracts that restrict or prohibit competition, but only "so long as such contracts are reasonable in time, area, and line of business . . . . and [the] restraint is supported by at least one legitimate business interest justifying the restraint, and reasonably necessary to protect that interest." Fla. Stat. § 542.335(1). "The covenant cannot be used as a tool simply to eliminate competition." *See Hapney v. Cent. Garage, Inc.*, 579 So.2d 127, 131 (Fla. 2d DCA 1991) (discussing that employer may not prohibit ordinary competition and that special facts over and above ordinary competition must exist before protection will be granted), *disapproved on other grounds*, *Gupton v. Village Key & Saw Shop, Inc.*, 656 So.2d 475, 476 (Fla. 1995). The covenant may also be unreasonable when it inflicts an unduly harsh or unnecessary result upon the employee. *Edwards v. Harris,* 964 So.2d 196, 197-98 (Fla.App. 1st DCA 2007) (citing *Auto Club Affiliates, Inc. v. Donahey*, 281 So.2d 239, 241 (Fla. 2d DCA 1973) and *Austin v. Mid State Fire Equip. of Cent. Fla., Inc.*, 727 So.2d 1097, 1098 (Fla. 5th DCA 1999)).

A restrictive covenant which attempts to restrict an employee from working with a competitor "in any capacity" is not enforceable because there is generally a lack of evidence that the former employer would be harmed simply by the employee's employment with a competitor. *See Edwards,* 964 So.2d at 198. The employee can only be restricted from engaging in activities "harmful to the legitimate business interest" of the former employer. *Id.* Under the facts presented to the Court, Diaz was selling *new* timeshares for Wyndham Resorts – he was not offering to *resell* existing timeshares

for people who already owned them[14]. Therefore, Diaz's employment selling new timeshares cannot be found to be "harmful to the legitimate business interest" of Exchange International, who is in the business of providing services exclusively to resellers. For this reason, Exchange International has not shown a likelihood of success in enforcing the non-compete covenant against Diaz.

### 2. Irreparable injury

Exchange International argues it will be irreparably injured if the injunction does not issue. Under Florida Statute § 542.335(1)(j), the violation of an enforceable restrictive covenant creates a "presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." Fla. Stat. § 542.335(1)(j); *Proudfoot Consulting,* 576 F.3d at 1231. The evidence that Laroussi's activities pose a significant harm to Plaintiff's business is rather thin. However, by its nature, evidence of lost sales and harm to reputation caused by the market being cheapened by inferior products can be hard to come by.

The Court may also presume irreparable harm to Exchange International since it has shown a likelihood of success on the merits of its copyright infringement claim against VOR. *See CBS Broad., Inc. v. EchoStar Communs. Corp.*, 450 F.3d 505, 517 (11th Cir. 2006) ("Under the Copyright Act, however, a plaintiff need not show irreparable harm in order to obtain a permanent injunction, so long as there is past infringement and a likelihood of future infringement.").

### 3. Balance of harms

Exchange International argues that the balance of harm favors a preliminary injunction against Laroussi because of the extensive confidential information he received while employed there. The non-compete covenants were appropriately limited to protect Exchange International's legitimate business interests, while also limited in time and scope to enable Laroussi to seek alternate

---

[14]As explained above, the claims may be mooted by Diaz's move to Mexico.

employment. (In fact, Diaz did obtain employment selling new timeshares, which is not directly in conflict with Exchange International's legitimate business interests.) The balance of harms favors Exchange International over VOR selling the verbatim package; however, the claims against VOR may be moot.

### 4. Public Interest

Exchange International argues that the public interest favors a preliminary injunction against the marketing and sale of the VOR advocacy package and an order for the return of Exchange International's customer database before Laroussi has the opportunity to remove the database from the jurisdiction of this Court.

However, on this record, the Court does not see any significant public interest in whether these Defendants are enjoined from the complained of activities, other than the abstract principle in favor of enforcement of legal norms. To the extent this factor applies in this case, it mildly supports Plaintiff's position as those areas where it has shown a likelihood of success on the merits.

### Recommendation

It is respectfully **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction be **GRANTED** in part and **DENIED in part** as set forth above. Plaintiff should be directed to submit a proposed form of preliminary injunction consistent with this Report and Recommendation (or any Order from the District Judge which modifies the rulings).

With respect to posting of a bond, the amount should be sufficient to compensate the enjoined party for any losses should the injunction later be determined to have been improvidently issued. With respect to Laroussi, the effect of a preliminary injunction would be, at least temporarily, to render him unemployed with little prospect for new work. Accordingly, it is appropriate to measure his potential

loss by the duration of the injunction.  It is recommended that Plaintiff be required to post a bond of $25,000 for each six month period it wishes to extend the injunction within the two-year limit.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 27, 2010.

*David A. Baker*
                   DAVID A. BAKER
           UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties
Courtroom Deputy